# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                         Plaintiff,<br>  vs.<br>LORENA PEREZ VELDERRAINT,<br><br>                        Defendant. | CASE NO. 10CR613WQH<br><br>ORDER |

The matter before the Court is Defendant's motion to suppress evidence (#11-3) and motion to suppress statements. (Doc. # 11-4).

**BACKGROUND FACTS**

On December 28, 2009, at approximately 9:00 p.m., Defendant approached the United States Border Patrol Checkpoint on Highway 111 near Niland, California driving alone in a vehicle. Border Patrol Agent Barajas was conducting primary inspection. Agent Barajas referred the Defendant to the secondary inspection area.

United States Border Patrol Agent David Alonso first encountered the Defendant in the secondary inspection area sitting on a bench located near her vehicle. Defendant was not handcuffed. Agent Alonso was in uniform and armed. There were approximately three border patrol agents in the secondary area. No guns were drawn by any border patrol agent at any point in this case. Agent Alonso asked the Defendant for her identification and questioned Defendant regarding the ownership of the vehicle. Agent Alonso asked the Defendant for

1  permission for himself and his canine partner to search her vehicle. Defendant gave her
2  consent. At the evidentiary hearing, the Agent Alonso did not recall the exact words he used
3  to request consent or the exact words the Defendant used to give her consent.

4  After the canine search, Agent Alonso asked the Defendant for consent to search her
5  vehicle with the X-ray machine. Defendant gave her consent.

6  A large quantity of methamphetamine was found in the vehicle. Defendant was placed
7  under arrest. The agents removed the drugs from a compartment in the vehicle and weighed
8  the drugs prior to referring the case to the Drug Enforcement Administration.

9  At approximately 1:00 a.m., on December 29, 2009, Drug Enforcement Administration
10 (DEA) Agent Barbara Hopkins, the duty agent in Yuma, Arizona, received a phone call from
11 border patrol agents at the Highway 111 checkpoint informing her that the agents had
12 intercepted a large quantity of methamphetamine. Agent Hopkins testified at the hearing that
13 it is standard procedure for a DEA Agent to take over a case at the Highway 111 checkpoint
14 when a large quantity of drugs is found, and that the closest DEA Agent is three hours away
15 from the checkpoint in Yuma, Arizona. Agent Hopkins agreed to take over the case and left
16 for the checkpoint within forty-five minutes of the call.

17 At approximately 3:45 a.m. on December 29, 2009, Agent Hopkins and Agent Philip
18 Jones arrived at the Hwy 111 checkpoint. Approximately fifteen minutes after arriving, Agent
19 Hopkins read Defendant her *Miranda* rights witnessed by Agent Jones. Defendant waived her
20 rights and agreed to answer questions. Agent Hopkins questioned the Defendant regarding her
21 possession of the vehicle. Defendant denied knowledge of the drugs during the interview. The
22 interview of the Defendant was completed in approximately 30 minutes. During the interview,
23 the Defendant was not handcuffed, no firearms were drawn, and no agent yelled at the
24 Defendant. At some point during the interview, Agent Hopkins told the Defendant that she
25 did not believe the Defendant's statement denying knowledge of the drugs in the vehicle.

26 During the interview, the Agent Hopkins asked the Defendant if she would give
27 permission to search her cellular phone. Defendant responded that the cellular phone was
28 already in the Agent's hands. Agent Hopkins then stated that she was asking for permission

1 to look at the phone and the Defendant indicated yes. Pursuant to Defendant's consent, Agent
2 Hopkins searched Defendant's cellular phone. Agent Hopkins testified at the hearing that it
3 was her common practice in all cases to search the suspect's cellular phone and that she would
4 have obtained a warrant if consent was not given. Agent Hopkins also testified that she later
5 obtained a search warrant for the Defendant's cellular phone from the Magistrate Judge.

6 After the interview, Agent Hopkins called the Imperial County Jail from the checkpoint
7 and was informed that they were not accepting federal female inmates at that time. Agent
8 Hopkins and Agent Jones transported the Defendant to the DEA Office in Imperial County
9 arriving around 5 or 6 a.m. The agents called the Metropolitan Corrections Center (MCC) in
10 San Diego from the DEA Office and obtained the earliest booking time. The agents took the
11 Defendant to the MCC in San Diego for booking at 1:00 p.m.

12 On December 29, 2009, a complaint was filed charging Defendant with possession of
13 a controlled substance with intent to distribute.

14 On December 30, 2009, Defendant made her initial appearance in the District Court for
15 the Southern District of California before the United States Magistrate Judge.

16 On February 24, 2010, the federal grand jury in the Southern District of California
17 returned an Indictment charging the Defendant with possession of a controlled substance with
18 intent to distribute in violation of 21 U.S.C. § 841(a)(1).

19 **ANALYSIS**

20 **Consent to Search**

21 Defendant moves the Court to suppress all evidence seized and statements made to
22 government agents. Defendant contends that the warrantless search of her vehicle violated her
23 rights under the Fourth Amendment of the United States Constitution. Defendant contends that
24 her consent to search the vehicle and her cellular telephone was not voluntary. Defendant
25 asserts that her will was overborne by the fact that she was in custody and the statement made
26 by Agent Hopkins that she did not believe the Defendant's statement that she did not know that
27 there were drugs in her vehicle. The Government asserts that the Defendant gave the agents
28 valid consent to search her vehicle and her cellular phone. The Government asserts that there

are no facts in this case which would support the Defendant's position that her consent was a product of coercive police behavior.

"An individual may waive his Fourth Amendment rights by giving voluntary and intelligent consent to a warrantless search of his person, property, or premises." *United States v. Torres-Sanchez*, 83 F.3d 1123, 1129 (9th Cir. 1996). Consent to search is valid if voluntarily given. *Schneckloth v. Bustamonte,* 412 U.S. 218, 248 (1973). Voluntariness is a question of fact to be determined from the "totality of the circumstances." *Id.* at 226. *See also, United States v. Cormier*, 220 F.3d 1103, 1112 (9th Cir. 2000). There are five factors that a court should look at in order to determine whether a consent is voluntary: "1) whether the defendant was in custody; 2) whether the arresting officers had their guns drawn; 3) whether Miranda warnings were given 4) whether the defendant was told he had the right not to consent; and 5) whether the defendant was told that a search warrant could be obtained." *Id., See also United States v. Morning,* 64 F.3d 531, 533 (9th Cir. 1995). The court looks to the totality of the circumstances and the absence or presence of any one factor is not determinative.

In this case, Defendant was stopped at a clearly marked border patrol checkpoint by uniformed border patrol agents. The referral to secondary was lawful. Once at the secondary inspection, "lawful searches may be undertaken pursuant to a finding of probable cause or with the consent of the defendant." *United States v. Morales*, 972 F.2d 1007, 1010 (9th Cir. 1992). The evidence in this record establishes that the Defendant gave her consent to the canine search and the X-ray search to Agent Alonso, and her consent to the cellular phone search to Agent Hopkins. The Court must determine from the totality of the circumstances whether Defendant's consent was voluntary or the product of police behavior overbearing the will of the Defendant.

At secondary inspection, the Defendant was not in custody and *Miranda* warnings had not been given. Agent Alonso did not have a gun drawn and there is no evidence of any threatening or intimidating behavior of any kind by Agent Alonso or any other border patrol agent. The evidence in this record establishes that Agent Alonso requested consent to search and received voluntary consent from the Defendant.

The evidence in this record further establishes that Agent Hopkins informed the Defendant of the her *Miranda* rights prior to commencing the interview, and that Defendant choose to answer questions. Defendant was not handcuffed. No guns were drawn. There was no coercive, forceful or intimidating conduct by the agents during the interview. The Court concludes that the facts in this record support the conclusion that the Defendant's consent to search her cellular phone was voluntary.

**Delay in Questioning and Initial Appearance**

Defendant contends that her statements must be suppressed on the grounds of unreasonable and unnecessary delay prior to the initiation of her interview and her initial appearance before the Magistrate Judge. The Government asserts that the interview of the Defendant at the checkpoint took place within a reasonable time based upon the time required to remove the drugs from the vehicle and the isolated location of the checkpoint.

18 U.S.C. § 3501(c) provides in relevant part: "In any criminal prosecution by the United States..., a confession made or given by a person ... under arrest..., shall not be inadmissible solely because of delay in bringing such person before a magistrate judge . . . if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest . . .: Provided, that the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate judge . . . beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available ...magistrate judge."

The "clear effect of [section 3501(c)] is to create a six hour 'safe harbor' during which a confession will not be excludable [solely because of delay]." *United States v. Van Poyck*, 77 F.3d 285, 288 (9th Cir. 1996) (citations omitted). Statements made outside the six-hour "safe harbor" may be excluded solely for delay, but a court is not obligated to do so. *Id.* The safe harbor may be expended beyond the six hours if the delay is reasonable and is due to the means of transportation and the distance to the nearest magistrate. *Id.* A statement made

outside the six hour safe hour period will be admitted "if the delay is reasonable or if public policy concerns weigh in favor of admission." *United States v. Padilla-Mendoza*, 157 F.3d 730, 731 (9th Cir. 1998). In *Corley v. United States*, _U.S._, 129 S.Ct. 1558 (2009), the United States Supreme Court stated:

> We hold that § 3501 modified *McNabb-Mallory* without supplanting it. Under the rule as revised by § 3501(c), a district court with a suppressing claim must find whether the defendant confessed within six hours of arrest (unless a longer delay was "reasonable considering the means of transportation and the distance to be traveled to the nearest available [magistrate]"). If the confession occurred before presentment and beyond six hours, however, the court must decide whether delaying that long was unreasonable or unnecessary under the *McNabb-Mallory* cases, and if it was, the confession is to be suppressed.

*Id*. at 1571.

The facts in this case show that the interview of the Defendant took place no more than six hours and thirty minutes after her arrest at the checkpoint. The Court finds that the border patrol officers removed the drugs from the vehicle and notified the DEA Agent Hopkins of the arrest within a reasonable time and that the DEA agents proceeded without delay to the checkpoint. The Court concludes that there was no unreasonable or unnecessary delay in this case. The amount of time between arrest and interview was reasonable based upon the time required to determine the amount of the drugs in the compartment of the vehicle, and the time required for transportation by the agents to the checkpoint.

A delay in presentment to a magistrate judge is presumed to be reasonable and constitutional, so long as presentment occurs within forty-eight hours. *See County of Riverside v. McLaughlin*, 500 U.S. 44, 55-58 (1991). Presentment in this case took place within forty-eight hours and there no facts in this case which would suggest any illegitimate reason for delay or any delay in order to facilitate interrogation of the Defendant.

IT IS HEREBY ORDERED that Defendant's motion to suppress evidence (#11-3) and motion to suppress statements. (Doc. # 11-4) are denied.

DATED: May 5, 2010

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge